JAMES G. NORRIE ET AL. *v.* THE HEIL COMPANY
(12851)

PETERS, C. J., HEALEY, SHEA, HULL and L. DORSEY, Js.

---

Argued March 5—decision released May 26, 1987

*Robert J. Sweeney,* with whom, on the brief, were *James F. Early* and *James D. Horwitz,* for the appellants (plaintiffs).

*Joseph A. Moniz,* with whom was *Sally R. Moore,* for the appellee (defendant).

HULL, J. After a trial to a jury in this strict liability action, judgment was rendered for the defendant. From this judgment, the plaintiffs have appealed, claiming that the trial court erred: (1) in effectively charging the jury that contributory negligence is a defense to an action in strict tort liability; (2) in using special interrogatories which inaccurately described the applicable law and confused the jury; and (3) in accepting a jury verdict finding the conduct of the named plaintiff both foreseeable and not foreseeable.

The jury could reasonably have found the following facts. The plaintiff, James G. Norrie,[1] began working at Connecticut Waste Processing, Inc. (Connecticut Waste), as a driver and unloader of a waste disposal truck in September, 1977. Prior to working for Connecticut Waste, the plaintiff had enrolled in and completed the course at New England Tractor Trailer Training School in Somers to become a licensed tractor trailer truck driver. In addition to this training, the plaintiff had other experience operating tractor trailers. Upon being hired by Connecticut Waste, the plaintiff was trained for two consecutive days in the operation and unloading of a transfer trailer manufactured by the defendant, the Heil Company (Heil), which he was to drive. The training program included, inter alia, instructions on the proper method of unloading the Heil transfer trailer.

The Heil transfer trailer was used to haul trash. The trailer contained two doors at its rear end, a small lower door which was used for loading, and a larger door which was used for unloading trash. The Heil transfer trailer was loaded with trash by first opening the small door and backing the trailer up to a trash compactor, which fit or hitched onto the opening of the small door. The compactor then would push the trash through the small door opening into the empty trailer. The latch mechanism for opening the small door was located in the middle of the rear end of the trailer. This door was properly used only for loading the trash into an empty transfer trailer.

Connecticut Waste did not instruct the plaintiff as to any use for the small door other than for loading the trailer. The plaintiff was instructed by Connecticut Waste that the Heil transfer trailer was unloaded

---

[1] The plaintiffs in this action are James G. Norrie and his wife, Susan J. A. Norrie. The term "plaintiff" as used in this opinion refers to James G. Norrie.

by first opening the large door and then engaging a ram mechanism to push the trash out of the trailer. The large door was opened by pushing down a lever located at the rear end of the trailer, on the passenger's side. Once the lever was in the down position, the driver would then engage the ram mechanism from the cab of the trailer. The ram, which is located at the front end of the trailer, would then push the load out of the large door of the trailer by hydraulic pressure. The load could not be pushed out of the small door.

The plaintiff's exclusive duties at Connecticut Waste consisted of hauling trash from a transfer station in New Haven to various landfill dump sites. Depending upon the location of the dump site, the plaintiff would make three to six trips daily. On each trip the plaintiff would load and then unload the Heil transfer trailer.

The plaintiff was aware of the proper method of loading and unloading the Heil transfer trailer as described above. He claimed, however, that there were times when he found it difficult to release, or shift, the lever for the large door. When this occurred, he sometimes would use a two-by-four to pound at the latch mechanism on top of the large door to force the door open. At other times, he would open the small door to relieve the pressure on the large door, and then he would open the large door in the normal fashion.

On October 17, 1978, the plaintiff had made three trips before the accident occurred. On the fourth trip, the plaintiff was unable to release the latch for the large door and thus opened the small door to relieve the pressure. He claimed that when he opened the small door it sprang out, hitting him in the neck and upper shoulder areas. He then opened the large door by the latch and proceeded to unload the trailer.

The plaintiff completed unloading the trailer and returned to Connecticut Waste. He did not seek medi-

cal treatment for his injuries until almost six weeks later, when he was treated for neck injuries. The plaintiff underwent surgery in October, 1979, for a fusion of his cervical spine. He was operated on again for the same condition in June, 1980, because the initial fusion "did not take."

The plaintiff subsequently brought suit under our product liability statutes, General Statutes § 52-572l, et seq. He alleged that the defendant was strictly liable to him because the Heil transfer trailer was defective, unsafe and unreasonably dangerous, and the defects were a direct and proximate cause of his injuries. The defendant raised five special defenses, including product misuse and knowingly using the product in a defective condition. The trial court charged the jury as to the claim of strict product liability and the special defenses.[2] The jury returned a verdict for the

---

[2] The court instructed the jury on the special defenses as follows: "The first special defense says, 'Any injuries or losses or damages the plaintiff sustained as alleged in their complaint were directly and proximately caused by the fault of the plaintiff James G. Norrie in that he unloaded the packer trailer improperly although he was trained and operates a packer trailer, but failed to follow instructions for unloading the packer trailer.' Basically, that special defense—the defendant claims that [in] unloading this packer trailer the operator should have stood on the side of the trailer and used the lever to open the entire door. I think it's the defendant's claim that the lower inner door was only supposed to be used for loading the transfer trailer, and that when you are unloading it the whole tailgate was supposed to come open. Now the question being as again it gets into the area of—I told you about foreseeability. Was it foreseeable or not foreseeable by the manufacturer that some operator would get behind it. Again, those are the two things you've got to consider.

"And now the second special defense. 'If the plaintiff sustained injuries, losses and damages as alleged in the complaint, said injuries, losses and damages were directly [and] proximately caused by the plaintiff James G. Norrie by misuse of the product in question, which misuse was to bar the plaintiff's claim.' Well, all it says [is that] he's making a claim of misuse. That's one of the claims that I see would be incorporated from what I said before.

"Number three. Third special defense. 'Any injuries, losses or damages the plaintiff sustained as a result of the failure to warn were directly and

defendant. Through the use of special interrogatories, it was shown that the jury found that the defendant had proved "that the misuse or failure to properly load the transfer trailer by the plaintiff was a proximate cause of the plaintiff's injuries." The plaintiff's motion to set aside the verdict was denied.

## I

The plaintiff's first claim is that the trial judge erroneously charged the jury on contributory negligence, which is not a defense to a products liability action. In order to understand the subtle distinction raised in this issue, it is helpful to look briefly at the history of defenses to products liability actions in Connecticut.

Prior to 1977, this court held that contributory negligence in the use of a product, as distinguished from failure to discover a defect, was a defense to a strict products liability claim. See *Hoelter* v. *Mohawk Service, Inc.*, 170 Conn. 495, 505–506, 365 A.2d 1064 (1976). In 1977, however, the legislature enacted General Statutes § 52-572*l*. Public Acts 1977, No. 77-335. The following is the pertinent language of the statute: "In causes of action based on strict tort liability, contributory negli-

proximately caused by the carelessness of the plaintiff James Norrie in one or more of the following respects. He opened the rear door of the packer trailer improperly although he knew the proper way of opening said door. He failed to follow instructions for properly unloading the packer trailer when he was trained and experienced in the proper way to unload the packer trailer.' So again, it's basically the defendant's claim that you're not supposed to unload this truck—trailer—that way, and again it's a question of whether or not it was, first of all, a defect unreasonably dangerous and whether or not on the warnings whether or not it was foreseeable by Heil that somebody would get back there and try and open the trailer that way. So that's for you to decide.

"Now the fourth special defense basically only applies to the claim of whether or not the trailer at the time of the injury was in substantially the same condition when it left the defendant's hands, and I've already described that to you so I'm not going to describe that any more.

"Now the fifth special defense was as to the second count of the complaint, and I'll get to that a little later on."

gence or comparative negligence shall not be a bar to recovery. . . . Nothing in this section shall be construed as barring the defense of misuse of the product or the defense of knowingly using the product in a defective condition in an action based on strict tort liability."

This statute, therefore, eliminated contributory negligence as a defense to products liability actions, while expressly allowing the defenses of "misuse of the product" and "knowingly using the product in a defective condition." "[K]nowingly using the product in a defective condition" has been defined narrowly. It "is narrower than the common-law defense of assumption of the risk, which bars recovery when a person knows *or as a reasonable person should know* that in pursuing a certain course he will expose himself to the risk of injury, comprehends *or ought as a reasonable person to comprehend* the nature and extent of the risk and voluntarily subjects himself to it. *Nally* v. *Charbonneau,* 169 Conn. 50, 53, 362 A.2d 494 (1975)." (Emphasis in original.) *Kelly* v. *Deere & Co.,* 627 F. Sup. 564, 565 (D. Conn. 1986). In other words, the risk must be assumed knowingly and voluntarily. Mere negligence will not be sufficient to deny recovery.

The other valid defense under General Statutes § 52-572*l* is misuse of the product. "Misuse" occurs when a product is not used "in a manner which should have been foreseen by the defendant." *Hoelter* v. *Mohawk Service, Inc.,* supra, 517.

We now turn to the jury instruction in question. After reading to the jury the special defenses, the court instructed in relevant part: "[I]t's basically the defendant's claim that you're not supposed to unload this truck—trailer—that way, and again it's a question of whether or not it was, first of all, a defect unreasonably dangerous and whether or not on the warnings

whether or not it was foreseeable by Heil that some-
body would get back there and try and open the trailer
that way. So that's for you to decide. . . .

"Now, basically, as I said, the special defenses are
a claim of the misuse of the product. If you find that
the plaintiff was misusing the product at the time of
his injury, then as I said before your verdict would have
to be for the defendant. Misuse of a product has been
defined as 'use in a manner not reasonably foreseen
by the manufacturer. A manufacturer or seller is
entitled to expect a normal use of his product.' This
special defense also incorporates the plaintiff's, again,
I suppose, voluntarily proceeding to encounter a known
danger. That's the defendant's claim. He'd been dump-
ing these trailers for a long time. He should have known
that there was a potential hazard."

The court charged further: "If you find that the plain-
tiff knew or should have known of a hazard to which
he was exposing himself by unloading it as set forth
in the third count of the special defense, or again by
failing to follow—you know—the instructions that he
was given, that's for you to determine what instruc-
tions he was given, if any, again, then he may not
recover under this complaint.

"If you find that he moved to encounter a known dan-
ger, and this moving to encounter a danger which he
knew or should have known was a proximate cause
either of the initial incident or of a subsequent injury,
then obviously he's [not] entitled to recover."[3]

We conclude that the trial court's charge did not
include contributory negligence as a special defense.
When the court charged the jury that misuse is use " 'in
a manner not reasonably foreseen by the manufac-

---

[3] The defendant objected and excepted to this charge on several grounds,
including the one we now address.

turer,' " this charge accorded with well established legal principles. See *Hoelter* v. *Mohawk Service, Inc.,* supra (*Bogdanski, J.,* dissenting); 2 Restatement (Second), Torts § 402A, comment h; R. Yules, "Defenses in a Connecticut Product Liability Case," 57 Conn. B.J. 441, 441–42 (1983); D. Epstein, "Products Liability: Defenses Based on Plaintiff's Conduct," 1968 Utah L. Rev. 267, 270. The language cannot be considered to refer to the kind of contributory negligence that consists of a failure to discover or guard against a defect. Further, although the court erroneously used the language "knew or should have known" in the portion of the instruction referring to the defense of voluntarily and knowingly encountering a risk, the error was not harmful.

A jury charge must be read in its entirety and judged by its total effect. *Herb* v. *Kerr,* 190 Conn. 136, 138, 459 A.2d 521 (1983). The charge must be examined as a whole to determine whether it fairly presents a case to a jury so that no injustice results and is not to be examined " 'with [a] legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements.' " *Ubysz* v. *DiPietro,* 185 Conn. 47, 57, 440 A.2d 830 (1981). While the language "knew or should have known" is somewhat suggestive of the concept of contributory negligence, we conclude that the charge, when read as a whole, could not have misled the jury regarding the proper definition of the defense of "voluntarily encountering a known danger." The court charged correctly on the special defenses, stating no less than three times that one defense was "voluntarily proceeding to encounter a known danger." We conclude that even though certain portions of the court's instructions were incorrect, when read in the context of the entire charge, the jury probably was not misled or confused.

## II

The plaintiff's second claim is that the court erred in using special interrogatories which inaccurately described the applicable law and confused the jury. The trial court submitted seven special interrogatories to the jury, which read as follows:[4] "(1) Did the plaintiff prove that the design of the lower rear door fastening and release mechanism was in a defective condition unreasonably dangerous for use by the plaintiff in that it required the plaintiff to be in front of the door when opening it? If the answer to this question is yes, go on to the next question. [Yes.] If the answer is no, you must render a verdict for the defendant. (2) Did the plaintiff prove that when the transfer trailer left the possession of the defendant that it was in the defective condition as referred to in Question 1 above? [Yes.] If the answer to this question is yes, go on to the next question. If the answer is no, you must render a verdict for the defendant. (3) Did the plaintiff prove that the defective condition of the transfer trailer as referred to in Question 1 was a proximate cause of (i.e., substantial factor) the plaintiff's injuries? [Yes.] If the answer to this question is yes, go on to the next question. If the answer is no, you must render a verdict for the defendant. (4) Did the plaintiff prove that the lower rear door fastening and release mechanism was defective and unreasonably dangerous in that adequate warnings were not provided? [Yes.] (5) Did the plaintiff prove that the failure to give adequate warning by the defendant was a proximate cause (i.e., a substantial factor) of the plaintiff's injuries? [No.] (6) Did the defendant prove that the plaintiff misused or failed to properly unload the transfer trailer? [Yes.] (7) Did the defendant prove that the misuse or failure to properly unload the transfer trailer by the plaintiff was a prox-

---

[4] The jury's responses are shown in brackets after each interrogatory.

imate cause (i.e.,substantial factor) of the plaintiff's injuries? [Yes.] If the answers to questions 6 and 7 are yes, you must render a verdict for the defendant."

The plaintiff claims that these interrogatories incorrectly stated the law and confused the jury in that they created the incorrect impression that in order for there to be a duty to warn, there must first be a finding that the product is defective. According to the plaintiff, the directions to special interrogatories Nos. 1, 2 and 3 informed the jury that it need not consider the failure to warn if it did not first find that the defective design was the proximate cause of the plaintiff's injuries. The plaintiff stresses that this is an incorrect statement of law, inasmuch as a failure to warn can be a defect by itself, not requiring a finding of any other defect. *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 236, 429 A.2d 486 (1980).

In reaching its verdict and in responding to the special interrogatories submitted to it, the jury concluded that the design of the small lower door created an unreasonably dangerous, defective condition, that it was in that condition when it left the defendant, that the defective condition was the proximate cause of the plaintiff's injuries, and that adequate warnings were not provided. The jury, however, also found that the failure of those warnings was not the proximate cause of the plaintiff's injuries, that the defendant proved that the plaintiff misused or failed to unload the trailer properly, and that the misuse or failure to unload properly was the proximate cause of the plaintiff's injuries. In summary, the jury concluded that a warning of the defective condition would not have prevented the plaintiff's injuries as the plaintiff was already aware of the condition which would have been the subject of the warning. These findings are consistent with one another. The jury's response to the special interrogatories is a strong indication that it understood the issues

presented to it. Even if the plaintiff's claim were correct, the error is rendered harmless by the fact that the jury did find that the product was defective in design, and that the defect was a proximate cause of the plaintiff's injuries.[5] Moreover, the jury's response to special interrogatory No. 4 indicates a finding that there was a failure to warn regarding this alleged defective condition. Consequently, the plaintiff could not have been harmed by these interrogatories; the jury found for the plaintiff on the very interrogatories in question.

The plaintiff was denied recovery because, as is shown by the response to special interrogatory No. 6, the defendant proved that the plaintiff misused or failed to unload the transfer trailer properly. Further, the interrogatories must be considered in conjunction with the court's instruction. The interrogatories are not vacuous words, but words which are amplified and defined in the charge. *Ubysz* v. *DiPietro,* supra, 59–60; *Gaulton* v. *Reno Paint & Wallpaper Co.,* 177 Conn. 121, 125, 412 A.2d 311 (1979). In light of our decision on the plaintiff's first claim of error and the finding that the special interrogatories are consistent, we find no merit to the plaintiff's second claim of error.

### III

The plaintiff's final claim is that the court erred in accepting a jury verdict that found that the conduct of the plaintiff was both foreseeable and not foreseeable. He asserts that in its responses to the special interrogatories, the jury found that the defendant failed to warn him about a *foreseeable* risk, while also coming to the contradictory result that the plaintiff's *unforeseeable* misuse of the product proximately caused his injuries. He argues that the jury's responses to those specific interrogatories are inconsistent. We disagree.

---

[5] See responses to special interrogatories numbers three and four.

Our role in addressing this claim is extremely limited. The trial court's refusal to set aside the verdict is entitled to great weight in our assessment of the claim that its decision is erroneous. *Kalleher* v. *Orr,* 183 Conn. 125, 126, 438 A.2d 843 (1981); *Waldron* v. *Raccio,* 166 Conn. 608, 618, 353 A.2d 770 (1974). The evidence and record must be given the most favorable construction in support of the verdict which is reasonable. *Kalleher* v. *Orr,* supra, 127; *Murteza* v. *State,* 7 Conn. App. 196, 203, 508 A.2d 449 (1986).

The plaintiff's claim takes into account only one of the two valid defenses to a products liability action. If "misuse of the product" were the only available defense to the plaintiff's action, the responses would appear to be inconsistent, as unforeseeability is an element of that defense. The plaintiff, however, has failed to take into account the "knowingly using the product in a defective condition" defense. Foreseeability has no effect on that defense. Special Interrogatory No. 7, to which the jury responded in the affirmative, read as follows: "Did the defendant prove that the misuse *or* failure to properly unload the transfer trailer by the plaintiff was a proximate cause (i.e., substantial factor) of the plaintiff's injuries?" (Emphasis added.)

It is not the function of a court to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences. When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers. *Gallick* v. *Baltimore & Ohio R. Co.,* 372 U.S. 108, 119, 83 S. Ct. 659, 9 L. Ed. 2d 618 (1963); *Kalleher* v. *Orr,* supra; *Shenefield* v. *Greenwich Hospital Assn.,* 10 Conn. App. 239, 247, 522 A.2d 829 (1987).

The results of the special interrogatories on the present case are easily harmonized. The jury did find

that the defendant failed to warn the plaintiff about a foreseeable risk. It also found that the plaintiff knowingly used a product in a defective condition. These conclusions are not inconsistent, and consequently the plaintiff's claim of error must fail.

There is no error.

In this opinion the other justices concurred.