[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
I.
Introduction
On February 2, 1992, the plaintiff, Kenneth Sylvain, filed this action against the defendant, Madison's, Inc. pursuant to General Statutes 52-572m, et. seq., Connecticut's Products Liability Act (hereinafter, the Act), alleging that he suffered personal injuries while using ski boots and bindings CT Page 10003 sold and installed by the defendant. The defendant filed an answer and four special defenses: first, that the plaintiff executed a form which released the defendant from liability; second, that the plaintiff was comparatively negligent; third, that the plaintiff's injuries were the result of aspects of the sport of skiing, which, under the current state of the art, could not be avoided; and fourth, that the plaintiff assumed the risks associated with skiing. The plaintiff now seeks to strike the defendant's third and fourth special defenses on the grounds that the defenses are not available in actions brought pursuant to the Act.
 II.
Discussion
 A.
"Whenever any party wishes to contest . . . the legal sufficiency of any answer to any complaint . . . or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book 152. The motion to strike admits all facts well pleaded and those facts necessarily implied from the allegations. D'Ulisse-Cupo v. Board of Directors, 202 Conn. 206, 208 (1987). It does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Blancato v. Feldspar Corp.,203 Conn. 34, 37 (1987). The court must construe the facts alleged in the manner most favorable to the pleader. Rowe v. Godou, 209 Conn. 273, 278 (1988).
 B.
1.
According to the National Ski Patrol, of the 55 million skier visits each year in the United States, there are approximately 160,000 ski injuries ranging from the trivial to the serious and even death. Over the past twenty years, the downhill skiing injury rate has decreased but now remains static at about 3 accidents per 1,000 skier visits. Injuries occur more often in the late afternoon due to the larger number of skiers on the hill, fatigue, poor lighting, and deteriorating snow conditions.[1] As stated by one court "[u]ndoubtedly, CT Page 10004 the danger of injury in the sport of skiing is inherent in that sport." Meese v. Brigham Young University,639 P.2d 720, 724 (Utah, 1981). The two special defenses reflect this inherent danger in the sport.
2.
The third special defense states:
 If the plaintiff sustained the injuries and damages as alleged, then said injuries and damages are the result of an unavoidable aspect of the sport of skiing, which was incapable, in light of the state of the scientific and technical knowledge existing in January of 1991, of being made safe without seriously impairing the product's usefulness and the ability to engage in the sport of skiing.
This special defense can best be said to be a state of the art defense (although it could also be argued that it is really a subpart of the assumption of the risk defense — the fourth special defense). Essentially, the defendant argues that "the current state of the art of ski binding release mechanisms is at best a compromise between the tasks of holding the ski onto the skiers boot while skiing yet releasing during a fall." (sic). (Defendant's Memorandum July 10, 1992). There is no question that this may be true. Indeed, the National Ski Patrol states:
 Modern alpine bindings are safer than the old cable bindings, but the perfect binding has yet to be developed. Such a binding would have to be inexpensive, simple to install, and easy to adjust and maintain. It would have to release during a fall but not during a hard turn, release equally well during all types of falls, and be unaffected by dirt, snow, ice, or corrosion. (sic).
 To improve skiing and increase safety, skiers should take good care of their bindings.[2]
CT Page 10005
The state of the art defense has been recognized as proper where the alleged defect in the product stems from a failure to warn. Schenck v. Pelkey, 176 Conn. 245, 250 (1978); Helmus v. Richards Medical Company, CA B-83-688 (D.Conn. 1988) (Burns, J.). There is no claim in this case, however, that there has been a failure to warn. See, for example, Lunt v. Mount Spokane Skiing Corporation, 814 P.2d 1189
(Wash.App. 1991); Persons v. Salomon North America Inc.,265 Cal.Rptr. 773 (Cal.App. 3 Dist. 1990).
In Murphy v. Chestnut Mountain Lodge Inc.,464 N.E.2d 818 (Ill.App. 1 Dist. 1984), a case not that dissimilar with the instant action, the court held that state of the art was not a defense to strict liability but allowed testimony on the issue of technologically feasible alternatives. This ruling is consistent with Judge Burns' ruling in Helmus, supra, 6. As she noted, "most courts hold that state of the art evidence is irrelevant to strict products liability actions because it impermissibly shifts the fact finder's focus from the challenged product to the defendant's conduct." Id., 4. "The doctrine of strict liability in tort is concerned with the character of the product injected into the stream of commerce not with the specific conduct of the defendant." Hall v. Burns, 213 Conn. 446, 461 (1990); Giglio v. Connecticut Light and Power Co., 180 Conn. 230, 234 (1980). This court is in agreement that the state of the art claim is improper as a special defense and should be stricken.
3.
The fourth special defense is assumption of the risk. Defendant claims:
 If the plaintiff, Kenneth Sylvain, sustained the injuries and damages as alleged, then said injuries and damages resulted from the plaintiff's knowing and voluntary assumption of the risks associated with skiing, as plaintiff was an experienced skier with nineteen years of skiing experience.
While assumption of the risk has been abolished as a defense to actions in negligence, General Statutes CT Page 1000652-572h(k), there is no equivalent prohibition in General Statutes 52-5721. That section states that:
 In causes of action based on strict tort liability, contributory negligence or comparative negligence shall not be a bar to recovery. The provisions of this section shall apply to all actions pending on or brought after June 7, 1977, claiming strict tort liability notwithstanding the date on which the cause of action accrued. Nothing in this section shall be construed as barring the defense of misuse of the product or the defense of knowingly using the product in a defective condition in an action based on strict tort liability.
Plaintiff argues that the only allowable defenses are the two stated defenses: misuse of the product and knowingly using the product in a defective condition. Norrie v. Heil Co., 203 Conn. 594, 600 (1987), suggests that this interpretation is correct. In ruling on whether contributory negligence was a defense to a products liability action, the court noted that this statute (52-5721) "eliminated contributory negligence as a defense to products liability actions while expressly allowing the defenses of `misuse of the product' and `knowingly using the product in a defective condition.'" While the latter defense would seem to include assumption of the risk, Yules, Defenses in a Connecticut Product Liability Case, 57 Conn. Bar Journal, Dec. 1983, at 447, the Norrie court rejected this proposition finding that the statutory defense is narrower than the common-law defense of assumption of the risk as "the risk must be assumed knowingly and voluntarily." Id., 600. While the defendant may wish to plead this statutory defense, it has not at this time. Assumption of the risks associated with skiing is not the equivalent of knowingly using the ski bindings in a defective condition. See, Kelly v. Deere Co., 627 F. Sup. 564 (D.Conn. 1986) (assumption of the risk defense stricken for failure to allege statutory requirements). Accordingly, the special defense of assumption of the risk is stricken.
 III.
Conclusion CT Page 10007
Plaintiff's motion to strike the third and fourth special defenses is granted.
Marshall K. Berger, Jr. Judge, Superior Court