## STEVEN ELLIOT ET AL. *v.* SEARS, ROEBUCK AND COMPANY (11185)

DALY, LANDAU and FREEDMAN, Js.

Argued January 14—decision released March 23, 1993

*Philip T. Newbury, Jr.,* for the appellant (defendant).

*John J. Nazzaro,* with whom, on the brief, was *Melissa Clott Shafner,* legal intern, for the appellees (plaintiffs).

FREEDMAN, J. In this product liability claim brought pursuant to General Statutes §§ 52-572m through 52-572r, inclusive, the defendant appeals from the judgment in favor of the plaintiffs[1] in the amount of $132,277.62. On appeal, the defendant claims that (1) the trial court improperly refused to charge the jury as requested on the issue of product alteration or modification, (2) the trial court improperly refused to charge the jury as requested on the issue of product misuse, (3) the trial court improperly instructed the jury that the plaintiffs need not prove a specific defect in order to recover, and (4) the plaintiffs failed to set forth a prima facie case of liability.[2] We affirm the judgment of the trial court.

The jury could reasonably have found the following relevant facts. The plaintiffs began adding a second story to their house in 1987. When the framing for the addition was complete and the plywood flooring had been laid, but before the staircase to the second floor had been installed, the plaintiff Steven Elliot placed a sixteen foot aluminum extension ladder, which he borrowed from his father-in-law, as a temporary stairway to the second floor. The ladder had been sold by the defendant.

For approximately four months, the plaintiffs and others used the ladder to climb to and from the second

---

[1] The plaintiff Robin Elliot, the wife of the named plaintiff, seeks damages for loss of consortium only, and, thus, her claim is entirely derivative of the named plaintiff's claim.

[2] At oral argument, the defendant withdrew three additional claims originally set forth in its brief.

floor. The base of the ladder was secured by a two-by-four nailed to the first floor landing. The top of the ladder was tied by rope to a two-by-four on the second floor landing. The rails of the ladder extended approximately one foot above the second floor landing. The ladder was erected at an angle of approximately sixty degrees, and there was no railing on either side of the ladder.

On April 17, 1987, Steven Elliot ascended the ladder to show a friend the work being done on the second floor. The telephone rang, and Elliot began to descend the ladder to answer the telephone. As was his customary practice, he descended the ladder with his back to the rungs. By his own admission, Elliot never read the warning and instruction labels which were placed on the ladder by the manufacturer. Among other things, these warnings and instructions state: "Always face ladder when climbing, working or descending. Keep body centered between side rails. Always maintain a firm hold on the ladder."

As he proceeded down to the first floor with his back to the ladder, Elliot lost his footing and began to fall. In an effort to stop his fall, he reached back with his left arm and attempted to grab hold of the ladder. In the course of grabbing the top of the ladder, the wedding ring on Elliot's left ring finger caught on a sharp, raw metal edge of the ladder, which caused the skin and soft tissue of the finger to be removed and left only the bone intact. The defendant was rushed to the hospital and his left ring finger was amputated.

The jury returned a verdict in favor of the plaintiffs' as follows: for the plaintiff, Steven Elliot, in the amount of $136,050 reduced by 25 percent for his comparative responsibility, for a net award of $102,037.50; for the plaintiff, Robin Elliot, in the amount of $10,000 reduced by 25 percent, for a net award of $7500. After the trial

court denied the defendant's postjudgment motions and rendered judgment on the jury verdict,[3] this appeal followed.

## I

The defendant's first two claims are interrelated and will be discussed together. The defendant first claims that the trial court should have instructed the jury on the issue of alteration or modification of the product in accordance with its request to charge.[4] The defendant next claims that the trial court should have instructed the jury that misuse of the product by the plaintiff is a bar to recovery.[5] We are not persuaded.

[3] Upon motion of the plaintiff, the trial court also awarded Steven Elliot prejudgment interest on the verdict in the amount of $22,740.12 pursuant to General Statutes § 52-192a.

[4] The defendant submitted the following request to charge on "alteration or modification":

"The law provides that: '(a) A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified . . . unless: (1) The alteration or modification was in accordance with the instructions or specifications of the product seller; (2) the alteration or modification was made with the consent of the product seller; (3) the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller.

" '(b) For purposes of this section, alteration or modification includes changes in the design, formula function or *use* of the product from that originally designed, tested or *intended* by the product seller.' (Emphasis added). General Statutes § 52-572p.

"The evidence in this case was that Mr. Elliot was using the ladder as a *staircase* at the time he fell. You also heard the testimony of Professor Jordan, Mr. Ver Halen and Mr. Records that a ladder is not designed nor intended to be used as a staircase, and that the clear and unambiguous instructions and warnings on the ladder itself state: 'Always face ladder when climbing, working or descending'; and 'Maintain a firm hold on the ladder.'

"If you find that Mr. Elliot's use of the ladder on April 17, 1987, was not intended nor anticipated by the defendant, then such a use would constitute an alteration or modification which absolves the defendant of liability, and your verdict should be for the defendant. General Statutes § 52-572p." (Emphasis in original.)

[5] The defendant submitted the following request to charge on "misuse":

"The defendant claims that Mr. Elliot was misusing the product at the

"The court is under no duty at any time to charge in the exact language requested. . . . Failure to charge precisely as proposed by a defendant is not error where the point is fairly covered in the charge. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Citations omitted.) *Tomczuk* v. *Alvarez,* 184 Conn. 182, 190, 439 A.2d 935 (1981); *State* v. *Commerford,* 30 Conn. App. 26, 32, 618 A.2d 574, cert. denied, 225 Conn. 903, 621 A.2d 285 (1993). Under this standard of review, we conclude that the trial court properly discharged its duty to instruct the jury in a manner calculated to give a clear understanding of the issues presented for their consideration.

---

time of the accident. You will recall the testimony of Mr. Elliot himself that he was using the ladder as though it was a *staircase.* You also heard the testimony of Professor Jordan, Mr. Ver Halen and Mr. Records that a ladder is not designed nor intended to be used as a staircase, and that the clear and unambiguous instructions and warnings on the ladder itself state: 'Always face ladder when climbing, working or descending'; and 'Maintain a firm hold on the ladder.' You will also recall Mr. Elliot's testimony that he never read the warnings and instructions which were on the ladder, and that he was not facing the ladder, nor holding onto it, at the time he fell.

"Misuse of a product is all possible types of use, or conduct affecting use, which is improper in light of the qualities and characteristics of the product itself. *Peterson* v. *Parke Davis & Co.,* 705 P.2d 1001, 1003 (Colo. App. 1985). If you find that Mr. Elliot's misuse of the ladder was the proximate cause of his injuries, then the defendant is not legally responsible for those injuries, and you should return your verdict for the defendant. General Statutes § 52-572l; *Norrie* v. *Heil Co.,* 203 Conn. 594, 600–601, 525 A.2d 1332 (1987); *States* v. *R.D. Werner Co.,* 799 P.2d 427, 430 (Colo. App. 1990).

"The misuse alleged by the defendant is not only the act of descending the ladder as though it were a staircase, but also the failure to read and follow the instructions and warnings concerning the proper set-up and use of the ladder. A seller of a product has the right to expect that users or consumers will read and follow instructions pertaining to the use thereof, and the failure to follow clear and unambiguous instructions and warnings is itself a misuse of the product which absolves the defendant of liability. General Statutes § 52-572p; *Peterson* v. *Parke Davis & Co.,* [supra]; *Erickson* v. *Monarch Industries, Inc.,* 216 Neb. 875, 347 N.W.2d 99, 109 (1984)."

The defendant contends that the defense of product alteration or modification should have been submitted to the jury because the evidence showed that the plaintiff Steven Elliot changed the use of the product from that for which it was intended by using the ladder as a staircase and by using the ladder in a manner contrary to the clear and unambiguous warnings attached to the ladder. General Statutes § 52-572p defines alteration or modification as "changes in the design, formula, function or use of the product from that originally designed, tested or intended by the product seller" and provides in pertinent part that "[a] product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third person unless . . . the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller." Section 52-572p, therefore, relieves a product seller of liability for changes in product *use* (1) when such modified use should not have been reasonably anticipated by the seller and (2) when the injury would not have occurred but for the fact that the product was not used as anticipated. In doing so, our statute incorporates what is known as the defense of unforeseeable product misuse, recognized in our common law doctrine of strict liability in tort; see *Hoelter* v. *Mohawk Service, Inc.,* 170 Conn. 495, 505–506, 365 A.2d 1064 (1976); into the defense of product alteration or modification. Consequently, the defendant was entitled to have the jury consider the applicable principles of § 52-572p. Under the circumstances of this case, however, where the alteration or modification alleged by the defendant pertains only to the plaintiff's use of the product, we will examine the court's instruction to determine whether the jury was properly instructed on the defense of product misuse.

In a product liability claim, the defense of product misuse arises when a product is used in a manner that should not have been reasonably foreseen by the defendant. *Norrie* v. *Heil Co.,* 203 Conn. 594, 600, 525 A.2d 1332 (1987); *Hoelter* v. *Mohawk Services, Inc.,* supra, 517. "The concept of misuse concerns an issue of causation and provides a complete defense to liability, regardless of any defective condition, if an unforeseeable and unintended use of the product, *and not the alleged defect,* caused the plaintiff's injuries." (Emphasis in original.) *States* v. *R.D. Werner Co.,* 799 P.2d 427, 429 (Colo. App. 1990).

Although the trial court refused to instruct the jury in the precise language of § 52-572p, it did instruct the jury on that aspect of § 52-572p most relevant to the factual dispute between the parties, namely, whether the plaintiff's use of the ladder constituted "misuse" and, if so, whether it, and not the alleged defect, caused the plaintiff's injuries. In this regard, the trial court instructed the jury at length on the issue of proximate cause, stressing that the plaintiff had the burden of proving that the alleged defect caused the plaintiff's injuries. The court also instructed the jury on the defense of misuse and on the defendant's claim "that the plaintiff's conduct in misusing the ladder contributed to the injuries which he sustained." In this manner, the court adequately instructed the jury that the defendant would not be liable if the plaintiff failed to establish that the defective product, and not some other factor, was the cause of the plaintiff's injuries and that the jury could consider the role of the plaintiff's alleged misuse of the ladder as it related to the question of causation.

As a corollary to its first argument, the defendant contends that the trial court should have instructed the jury that misuse is a bar to recovery. For this proposition, the defendant relies on General Statutes

§ 52-572*l*.[6] The short answer to the defendant's claim is that § 52-572*l* does not apply to a product liability claim pursuant to General Statutes §§ 52-572m through 52-572r, inclusive. *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 519, 562 A.2d 1100 (1989). The long answer is that while misuse can be a bar to a plaintiff's recovery where it is established that the plaintiff's misuse, and not the defect, is the cause of the injuries; *State* v. *R.D. Werner Co.*, supra; misuse will not bar recovery where the misuse played only a contributing role in the plaintiff's injuries. Under such circumstances, the principles of comparative responsibility embodied in General Statutes § 52-572o[7] will mandate a proportionate reduction in, but not a complete bar to, the plaintiff's recovery due to any responsibility attributed to the plaintiff due to product misuse.

Thus, as noted above, because the trial court adequately instructed the jury on the concept of proximate causation as it related to the plaintiff's injuries, the jury was appropriately apprised of that aspect of the doctrine of unforeseeable product misuse that will relieve a product seller of liability. Likewise, because the court specifically instructed the jury to consider (and it did, in fact, consider) the relative responsibility of the plaintiff in his misuse of the ladder in contributing to his

---

[6] General Statutes § 52-572*l* provides: "In causes of action based on strict tort liability, contributory negligence or comparative negligence shall not be a bar to recovery. The provisions of this section shall apply to all actions pending on or brought after June 7, 1977, claiming strict tort liability notwithstanding the date on which the cause of action accrued. *Nothing in this section shall be construed as barring the defense of misuse of the product* or the defense of knowingly using the product in a defective condition in an action based on strict tort liability." (Emphasis added.)

[7] General Statutes § 52-572o (a) provides: "In any claim under sections 52-240a, 52-240b, 52-572m to 52-572r, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant."

injuries and to apportion damages accordingly, the jury was appropriately apprised of that aspect of the doctrine of unforeseeable product misuse that will reduce, but not bar, recovery by the plaintiff.

The court's instructions on the issues of proximate cause and product misuse, when read as a whole, were appropriately adapted to the issues in the case and were stated so as not to mislead the jury. We decline the defendant's invitation to read portions of the jury instruction in isolation from the rest of the charge. See *Drummond* v. *Hussey*, 24 Conn. App. 247, 249, 588 A.2d 223 (1991). We, therefore, conclude that the court's charge to the jury accurately and adequately described the legal and factual bases of the defense of unforeseeable product misuse so that the jury was given a clear understanding of the issues and proper guidance in determining those issues.

## II

The defendant next claims that the trial court improperly instructed the jury that, in determining whether a product is in a defective condition because it is unreasonably dangerous to a user, "it is not necessary that the plaintiff establish a specific defect, so long as there is evidence of some unspecified danger."[8] The defend-

[8] The court's entire instruction on the "defective condition" element of the plaintiff's cause of action was as follows:

"Secondly, it is for you, the trier of fact, to determine whether this particular product, the ladder, was in a defective condition.

"A product is in a defective condition if it leaves the seller's hands in a condition not contemplated by the ultimate consumer or user which will be unreasonably dangerous to him. Accordingly, a product may be defective, even though it was manufactured in the way it was intended to be manufactured and even though it was perfectly made in accordance with the manufacturer's own standards, provided that the product is unreasonably dangerous to the user as a result of its normal use.

"A seller, however, is not liable when the seller delivers the product in a safe condition and subsequent mishandling or other causes make it harmful at the time it is consumed or used.

"The law provides [that] a product is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordi-

ant argues that the principle of law set forth in the challenged language is limited to those situations, not present in this case, where the plaintiff cannot identify any specific defect in a product and seeks instead to establish the product's defective condition through circumstantial evidence. See, e.g., *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.*, 35 Conn. Sup. 687, 690–91, 407 A.2d 1254 (1979). The defendant contends that the effect of the challenged instruction was to permit the jury to impose liability on the defendant if the jury determined that the ladder was dangerous due to its improper use by the plaintiff, rather than because of some physical quality of the ladder that would have constituted a defective condition. We do not agree.

In considering the defendant's challenge to the court's jury instruction, we must read the court's instructions as a whole, rather than in isolation, to determine "whether the charge as a whole fairly presented the case so that no injustice was done." *Drummond* v. *Hussey,* supra.[9] Here, immediately after the

nary consumer who purchases it with the ordinate knowledge common to the community as to its characteristics.

"In this regard, it is important to keep in mind that it is not necessary that the plaintiff establish a specific defect, so long as there is evidence of some unspecified danger.

"The second element, which the plaintiff must establish is that the product was in a defective condition unreasonably dangerous to the user. A product is in a defective condition unreasonably dangerous to the user if it is so likely to be harmful to persons that a reasonably prudent supplier who had actual knowledge of its harmful character would not place it on the market.

"It's not necessary to find that this defendant had knowledge of the harmful character of the product, if it was harmful, in order to determine that it was in a defective condition unreasonably dangerous to the user."

[9] We note that the court's entire instruction on the law of defective condition; see footnote 8, supra; including the challenged "specific defect" language, is nearly identical to the legal principles set forth in *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 234–35, 429 A.2d 486 (1980), in *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.*, 3 Conn. App. 661, 664, 491 A.2d 433 (1985), and in *Liberty Mutual Ins. Co.* v. *Sears,*

court instructed the jury on the elements of a product liability claim, including the challenged language, it summarized those legal principles by carefully relating the applicable law to the facts of this case.[10] We have recently noted that it is critically important that the trial court refer to the evidence in its instructions in order to assist the jury in " 'applying the law correctly to the facts which they might find to be established.' " *State* v. *Wolff,* 29 Conn. App. 524, 531, 616 A.2d 1143 (1992), quoting *Jacques* v. *Carter,* 2 Conn. App. 27, 33, 476 A.2d 621 (1984). Thus, the court explained that, for the plaintiff to prevail, the jury had to find "that the defendant distributed and sold the ladder with a dangerous sharp metal edge that should have been capped . . . [and] that the defective condition of the ladder proximately caused the plaintiff's injuries." Under these circumstances, the jury could not, as suggested by the defendant, have imposed liability because the ladder was dangerous due to the improper use of the ladder by the plaintiff. Rather, the jury was

*Roebuck & Co.,* 35 Conn. Sup. 687, 690–91, 407 A.2d 1254 (1979). The factual settings in those cases, however, did not involve allegations of a specific product defect, but rather situations of defectiveness due to a failure to incorporate adequate warnings; see *Giglio* v. *Connecticut Light & Power Co.,* supra; and defectiveness proven by inference from product malfunction; see *Living & Learning Centre, Inc.* v. *Griese Custom Signs, Inc.,* supra; *Liberty Mutual Ins. Co.* v. *Sears, Roebuck & Co.,* supra, 601. The challenged language, however, was inapplicable in a case, like the present one, where the plaintiff seeks to establish liability based on a specific and identifiable aspect of the manufacture of the product that is alleged to render the product unreasonably dangerous.

[10] The court summarized the essential elements of the plaintiff's strict liability claim as follows: "In summary then, as to the products liability doctrine, the plaintiffs must prove by a preponderance of the evidence, first, the defendant delivered the ladder, which was in a defective condition unreasonably dangerous to the plaintiff, and that the defendant distributed and sold the ladder with a dangerous sharp metal edge that should have been capped or in that the defendant failed to place safety caps on the side or end rails when it was not as feasible to do so. Second, that the ladder was expected to, and did, reach the plaintiff without substantial change in the condition in which the defendant delivered it; and third, that the defective condition of the ladder proximately caused the plaintiff's injuries."

,clearly informed that the defective condition, alleged by the plaintiff and to be evaluated by the jury, was the condition of the ladder as manufactured and placed into the stream of commerce by the defendant. Thus, the jury was informed that the plaintiff had alleged, *and was required to establish,* the presence of a specific defect that rendered the ladder unreasonably dangerous and that that defect had caused the plaintiff's injuries. Considering the court's instruction as a whole, as we must, we conclude that it "fairly presented the case so that no injustice was done." *Drummond* v. *Hussey,* supra.

### III

The defendant's final claim is that the plaintiffs failed to establish a prima facie case of liability on the part of the defendant.[11] This claim is without merit.

A verdict should be set aside only when the jury could not reasonably and legally have reached its conclusion. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 130, 540 A.2d 666 (1988). The defendant contends that the verdict was contrary to the weight of the evidence adduced at trial in two specific ways. First, the defendant argues that the plaintiffs failed to prove that Elliot was using the ladder for the purpose for which it was intended at the time of his fall as alleged in his complaint.[12] Even

[11] The defendant failed to move for a directed verdict; see Practice Book § 321; or a nonsuit; see General Statutes § 52-210; at the conclusion of the plaintiff's case. The defendant has therefore waived any claim that the plaintiff failed to establish a prima facie case.

The defendant did, however, move to set aside the verdict pursuant to Practice Book § 320 based, in part, on a claim that the plaintiffs failed to establish liability on the part of the defendant. Accordingly, we will review this claim as though it were a challenge to the court's failure to grant the motion to set aside the verdict.

[12] Product misuse is a defense in a product liability claim. The defendant argues, however, that by pleading in their complaint that Steven Elliot was using the ladder "for the use [for] which it was intended" at the time of his fall, the plaintiffs assumed the burden of proving this fact. See, e.g., *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 553 n.18,

if we accept the defendant's claim that "[t]he undisputed evidence in this case was that Mr. Elliot was not using the product for its intended purpose," product misuse is not necessarily a bar to recovery. See part I, supra. The jury determined that the plaintiff's improper use of the ladder was not the sole proximate cause of his injuries. The jury then considered the relative responsibility of Elliot in this regard and reduced his recovery accordingly. Neither of these fact bound determinations was contrary to the evidence. Second, the defendant argues that the plaintiffs failed to establish that the ladder was defective and that the alleged defect was the cause in fact of Elliot's injuries. Whether the existence of a sharp protruding edge on which jewelry can be snagged during an uncontrolled fall rendered the ladder unreasonably dangerous "is a question of fact to be determined by the jury. . . . [A]nd the jury can draw their own reasonable conclusions as to the expectations of the ordinary consumer and the knowledge common in the community at large." (Internal quotation marks omitted.) *Giglio* v. *Connecticut Light & Power Co.*, 180 Conn. 230, 235, 429 A.2d 486 (1980). Here, the jury reasonably could have found that the defendant's ladder was both dangerous and defective in that it was designed with a sharp metal edge that failed to prevent snagging and sharp edge injuries and that the sharp metal edge, either by itself or with the ring snagged on it, caused the injury to Steven Elliot's ring finger during his fall. Because the jury could reasonably and legally have reached its conclusion, the trial court properly refused to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

525 A.2d 940 (1987). Even if we accept this assertion to be true, under the comparative responsibility doctrine applicable in a product liability claim, "the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant." General Statutes § 52-572o.