**In re Paula MOSES, Appellee.**

**No. 94–FM–621.**

District of Columbia Court of Appeals.

Argued May 10, 1995.
Decided June 8, 1995.

---

Pierre E. Bergeron, for appellant.

Harvey Schweitzer, for appellee.

Richard G. Bergeron, Asst. Corp. Counsel, with whom Erias A. Hyman, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel and Janet Maher, Deputy Corp. Counsel, were on the brief, for the District of Columbia.

1. A guardian ad litem in mental retardation commitment proceedings has standing to appeal an order denying commitment. *See* D.C.Code § 6–1950 (1989); Super.Ct.Ment.Ret.R. 4(g).

2. At the time of the proceedings below, Moses was already committed to the custody of the District of Columbia by way of the neglect sys-

Before FERREN and TERRY, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

This is an appeal by petitioner Pierre Bergeron, guardian ad litem (GAL) of respondent Paula Moses, from an order dismissing his petition to have her committed to a facility for the mentally retarded. The trial judge dismissed the petition based on his finding that Moses was competent to refuse commitment. On appeal,[1] the GAL contends generally that the trial judge should have found Moses incompetent based on the evidence presented at the hearing and that in any event he applied an incorrect standard in making the competency determination. The GAL additionally contends that the trial judge erroneously excluded evidence bearing on Moses' competency. We affirm.

**I.**

In 1991, as Moses approached 21 years of age,[2] the GAL brought this petition to have Moses committed to the mental retardation system. She had been dually diagnosed as mentally retarded and suffering from Intermittent Explosive Disorder. At a preliminary hearing to determine her competency to refuse commitment, D.C.Code §§ 6–1921, – 1924 (1989), the GAL presented three witnesses—two social workers who testified as lay witnesses and a psychiatrist who testified as an expert witness that Moses was incompetent to refuse commitment. All three witnesses testified that without constant supervision and habilitation, she would be unable to care for herself and would place herself at risk. Nevertheless, the trial judge found that the GAL had failed to prove beyond a reasonable doubt that Moses was incompetent to make her own decisions and dismissed the petition.

**II.**

▉ We must first determine our standard of review of competency determinations

tem. D.C.Code §§ 6–2101 *et seq.* (1989 & Supp. 1994), 16–2301 *et seq.* (1989 & Supp.1994). Having since reached the age of 21, she is no longer in the District's custody but resides voluntarily in a District group home and participates in a sheltered workshop during the day.

under the Rights of the Mentally Retarded Citizens Act, D.C.Code §§ 6–1901 *et seq.* (1989). The Act presumes that individuals 14 years of age and older are competent to refuse commitment, *id.* § 6–1921, a presumption which is rebuttable only by proof beyond a reasonable doubt. *Id.* § 6–1947. Thus, we will overturn a trial court's determination of competency only where the evidence is such that, as a matter of law, a trier of fact would be compelled to find beyond a reasonable doubt that the individual was incompetent. *Cf. Johnson v. Lloyd,* 211 A.2d 764, 765 (D.C.1965) (upholding trial court's finding of parental fitness and refusing "to rule, as a matter of law, in a situation where reasonable men may rightfully differ, that the trial court was in error"); *Sullivan v. North Am. Accident Ins. Co.,* 150 A.2d 467, 470 (D.C. 1959) (reversing trial court because plaintiff's evidence was virtually uncontroverted and overwhelmingly against judgment for defendant); *Elliot v. Sears Roebuck & Co.,* 30 Conn.App. 664, 621 A.2d 1371, 1377 (1993) (holding that jury verdict should be set aside only where "jury could not reasonably and legally have reached its conclusion"). In this case, there was expert evidence on which the trial judge could have based a finding of incompetency, but he was not bound to credit this evidence and apparently did not do so. We cannot substitute our judgment for his.

### III.

■ As to the remaining contentions, we find no merit to the GAL's arguments. He submits that the trial judge misapprehended the standard for determining competency[3] and thus erred in finding Moses competent to refuse commitment. In ruling on the motion to dismiss the petition, the trial judge was not required to articulate the standard or his application thereof; in the absence of evi-

dence to the contrary, we presume that the trial judge understood and applied the correct standard. *See Johnson v. United States,* 398 A.2d 354, 368 (D.C.1979) (finding reversible error in trial court's affirmative misstatement of applicable legal principle). There is no indication in the record before us that the judge applied an improper standard. Rather, he simply concluded that the evidence was insufficient to prove beyond a reasonable doubt that Moses was incompetent.

■ Nor do we find an abuse of discretion in the trial judge's various evidentiary rulings. *See Hannan v. United States,* 76 U.S.App.D.C. 118, 120, 131 F.2d 441, 443 (1942) (holding that reception of evidence is matter of discretion). He correctly excluded evidence of Moses' past behavior in the community and in particular placements as irrelevant to her present competence. *Punch v. United States,* 377 A.2d 1353, 1358 (D.C. 1977), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978). The trial judge also properly exercised his discretion to exclude a third social worker's testimony as well as testimony of an independent psychologist and his written report as cumulative evidence. *Washington Times Co. v. Bonner,* 66 App.D.C. 280, 290, 86 F.2d 836, 846 (1936). Finally, the trial judge did not err in denying expert status to the two social workers who testified. "The question whether an expert has been sufficiently qualified is ... 'recognized as a matter for the trial judge's discretion reviewable only for abuse. *Reversals for abuse are rare.'*" *In re Melton,* 597 A.2d 892, 897 (D.C.1991) (en banc) (citation omitted; emphasis added).

*Affirmed.*

■

---

3. Although, at the time of the hearing, the Act did not define "competent," § 6–1922 (regarding the necessity of finding competence for voluntary admission) set forth basic considerations for determining competence: "the individual's understanding of what habilitation and care will be provided in the facility, and what alternative means of habilitation and care are available from community-based services." *Id.* A recent amendment to the Act defines "competent" as

"hav[ing] the mental capacity to appreciate the nature and implications of a decision to enter a facility, choose between or among alternatives presented, and communicate the choice in an unambiguous manner." 42 D.C.Reg. 721, 742 (Feb. 10, 1995). This new definition tracks the definition of "incapacitated individual" in the Health Care Decisions Act, D.C.Code § 21–2202(5) (1989).