### STEVEN ELLIOT ET AL. v. SEARS, ROEBUCK AND COMPANY
### (14764)

BORDEN, BERDON, NORCOTT, KATZ and PALMER, Js.

---

Argued January 13—decision released May 31, 1994

*Philip T. Newbury, Jr.*, for the appellant (defendant).

*John J. Nazzaro,* with whom, on the brief, was *Robert I. Reardon, Jr.,* for the appellees (plaintiffs).

BERDON, J. In this product liability claim brought pursuant to the Product Liability Act (act); General Statutes § 52-572m et seq.; the dispositive issue is whether the defendant product seller was entitled to a jury instruction on the defense of alteration or modification predicated on misuse under General Statutes § 52-572p, in addition to an instruction on misuse under the common law.

The plaintiff Steven Elliot[1] brought this action for damages as a result of injuries he received in a fall from a ladder sold by the defendant, Sears, Roebuck and Company. The jury, in finding the issue of liability in favor of the plaintiff, also found that the damages sustained by the plaintiff totaled $136,050, and that those damages were to be reduced by 25 percent as a result of the plaintiff's comparative responsibility. The trial court accordingly reduced the plaintiff's award, and rendered judgment for the plaintiff in the amount of $102,037.50. After the trial court denied the defendant's motion to set aside the verdict,[2] the defendant appealed to the Appellate Court. The Appellate Court affirmed the trial court's judgment; *Elliot* v. *Sears, Roebuck & Co.*, 30 Conn. App. 664, 621 A.2d 1371 (1993); and we granted the defendant's petition for certification.[3] Although we affirm the judgment of the Appellate Court, we base our decision on an analysis of the statutory language not relied upon by that court.

---

[1] The plaintiff Robin Elliot, the wife of the named plaintiff, joined this action claiming damages for loss of consortium. See *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 627 A.2d 1288 (1993). The jury found that her damages totaled $10,000, and that those damages should be reduced by 25 percent as a result of her husband's comparative responsibility. The trial court accordingly rendered judgment in her favor in the amount of $7500. Because, for the purpose of the issues involved in this appeal, the merits of her case are dependent upon her husband's case, we make reference only to the plaintiff Steven Elliot in this appeal.

[2] The defendant also filed other postverdict motions, none of which are relevant to this appeal.

[3] We certified for review the following questions: "1. Where the defense of alteration/modification of a product is asserted as a defense to a product liability claim, and there is evidence to support that defense, is the defendant entitled to a jury instruction on that defense separate and apart from any instruction on the issue of misuse of the product?

"2. Where it is claimed that misuse of a product is the proximate cause of an injury, and there is evidence to support that defense, is the defendant entitled to an instruction that if the jury so finds, the plaintiff is barred from recovery?" *Elliot* v. *Sears, Roebuck & Co.*, 225 Conn. 925, 625 A.2d 826 (1993).

The jury could reasonably have found the following facts. In April, 1987, the plaintiff and his wife, with the assistance of a contractor, were adding a full second floor to their A-frame house in Waterford. As a means of access to the new floor under construction, they borrowed a sixteen foot aluminum extension ladder, constructed with rounded rungs, belonging to the plaintiff's father-in-law. The ladder had been purchased from the defendant in 1985.

The plaintiff set up the ladder in the following manner. The base of the ladder was secured against a board that was nailed into the floor framing. The "fly" of the ladder, the moving part which extends its length, was extended one or two feet and tied to a two-by-four affixed to a partition on the second floor. The plaintiff set up the ladder in this manner so that it would not move or slip during use. The ladder was set at approximately a sixty degree angle, so that it would function as a staircase. At the top of the fly of the ladder, there was a sharp metal edge that was exposed when the ladder was extended. The plaintiff had not noticed this exposed edge prior to his injury.

The plaintiff often descended the ladder with his back to the rungs. A label on the ladder warned users "always [to] face ladder when climbing, working or descending." The label also contained the warning that users should always maintain a firm grip on the ladder. The plaintiff had not read any of the labels on the ladder prior to his accident.

On April 17, 1987, the plaintiff was visited by a friend. They each climbed the ladder to the second floor so the plaintiff could show him the progress made on the addition. After fifteen to twenty minutes, the telephone, which was located in the kitchen on the first floor, rang. In order to answer the telephone, the plaintiff descended the ladder, with his back to it, and about

half way down he lost his balance and slipped.[4] As he fell, he reached out with his left hand to grab something to steady himself. He was wearing his wedding ring on his left hand ring finger. As he attempted to break his fall, the ring snagged on the exposed sharp metal edge at the top of the extension ladder. This caused the plaintiff to suffer a degloving injury to the finger, leaving him with an exposed bone and tendon without any skin or soft tissue. His finger was eventually amputated.

Eric Jordan, an associate professor of mechanical engineering at the University of Connecticut, testified as an expert witness for the plaintiff. Jordan testified that it is generally recognized that metal ladders should include end caps and end closures or equivalent protection against sharp edges and snagging. He testified that although the ladder did include end caps, there was an exposed sharp upper edge of the ladder that was not capped. In his opinion, this presented a significant hazard of snagging, and therefore the end caps included with the ladder did not "fulfill the intended purpose of the end cap with regards to preventing snagging and sharp edge injury." In Jordan's opinion, the ladder was unreasonably dangerous due to the defectively designed end caps. Jordan also testified that the top of the ladder could have been fully capped without impairing the function of the ladder and without incurring a significant cost. Finally, he testified that although it is a misuse of the ladder to descend with one's back to the ladder, it is a common and foreseeable misuse that could reasonably be anticipated by the seller.

In adopting the act, the legislature intended to incorporate in a single cause of action an exclusive remedy for all claims falling within its scope. *Winslow* v. *Lewis-*

---

[4] The parties agreed that the plaintiff probably would not have fallen had he been facing the ladder as he descended it.

*Shepard, Inc.,* 212 Conn. 462, 471, 562 A.2d 517 (1989). In doing so, "the legislature was merely recasting an existing cause of action and was not creating a wholly new right for claimants harmed by a product. The intent of the legislature was to eliminate the complex pleading provided at common law. . . . 22 S. Proc., Pt. 14, 1979 Sess., pp. 4637–38; 22 H.R. Proc., Pt. 20, 1979 Sess., pp. 7021–22." *Lynn* v. *Haybuster Mfg., Inc.,* 226 Conn. 282, 292, 627 A.2d 1288 (1993). The act, however, is no model of clarity; an example is its ambiguous treatment of the defense of misuse that has resulted in this appeal.

One point of confusion regarding the act, as demonstrated by the briefs of the parties before us and by members of the bar,[5] is the belief that it was patterned after the Model Uniform Product Liability Act (model act), 44 Fed. Reg. 62714-50 (1979), recommended by the United States Department of Commerce on October 31, 1979. As we have previously stated, however, the act is based on the Draft Uniform Product Liability Law (draft act), published by the Department of Commerce on January 12, 1979, in 44 Fed. Reg. 2996 et seq. for public comment. See *Freeman* v. *Alamo Management Co.,* 221 Conn. 674, 681 n.7, 607 A.2d 370 (1992); *Winslow* v. *Lewis-Shephard, Inc.,* supra, 212 Conn. 469. This origin of our act is indicated by the date of its adoption,[6] its language,[7] and its legislative

[5] See, e.g., R. Yules, "An Analysis of Connecticut's New Product Liability Law," 56 Conn. B.J. 269, 269 and n.1 (1982).

[6] "The [product liability] act . . . was effective on October 1, 1979. The House of Representatives approved the final version of the act on May 11, 1979, and the Senate approved the act on May 29, 1979. 22 H.R. Proc., Pt. 21, 1979 Sess., p. 4306; 22 S. Proc., Pt. 14, 1979 Sess., p. 4650." *Lynn* v. *Haybuster Mfg., Inc.,* supra, 226 Conn. 291. The model act was published for the first time in the Federal Register on October 31, 1979. Department of Commerce, Office of the Secretary, 44 Fed. Reg. 62714-50 (1979).

[7] See Public Acts 1979, No. 79-483, as amended by Public Acts 1979, No. 79-631, § 106.

history.[8] There are substantial differences between the model act and the draft act. This is particularly so in regard to § 112 of the model act, upon which the defendant relies, as indicated below in this opinion.

The defendant, in addition to denying liability, raised two special defenses that are relevant to this appeal. In the first special defense, upon which the trial court instructed the jury, it alleged misuse of the product under the common law. The defendant based this claim on its allegations that the plaintiff descended the ladder as though it were a staircase, facing away from the ladder, and failed to read and follow the instructions and warnings concerning the use of the ladder. In the second special defense, predicated upon General Statutes § 52-572p, the defendant alleged that the "ladder was altered or modified by the plaintiffs or a third-party from the condition in which it was sold." The trial court refused to instruct the jury on the second special defense,[9] but did instruct on the first. The defendant claims that, although the trial court satisfactorily instructed the jury on the common law defense of misuse, it was also entitled to an instruction on the second special defense predicated on statutory altera-

[8] See 22 H.R. Proc., Pt. 20, 1979 Sess., p. 7021, remarks of Representative John A. Berman ("the bill is based upon a Department of Commerce draft in the area of product liability"); 22 S. Proc., Pt. 14, 1979 Sess., p. 4636, remarks of Senator Salvatore C. DePiano; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., p. 568, remarks of John Anderson, member of the governor's product liability task force.

[9] In an articulation, the trial court gave its reasons for not instructing the jury under the special defense of alteration or modification as follows. "The court refused to charge as requested by the defendant on the issue of alteration or modification of the product because, in descending the ladder with his back to the ladder, [the] plaintiff . . . did not alter or modify the ladder as contemplated by General Statutes § 52-572p. Subsection (b) of [§] 52-572p defines alteration or modification to include 'changes in the design, formula, function or use of the product from that originally designed, tested or intended by the product seller.' The ladder was used by the plaintiff to ascend to, and descend from, one location to another location, which was the function or use intended by the product seller for the ladder."

tion/modification by misuse under § 52-572p. Section 52-572p provides in pertinent part: "(a) A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third party unless: (1) The alteration or modification was in accordance with the instructions or specifications of the product seller; (2) the alteration or modification was made with the consent of the product seller; or (3) the alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller. (b) For the purposes of this section, alteration or modification includes changes in the design, formula, function or *use* of the product from that originally designed, tested or intended by the product seller." (Emphasis added.)

The defendant argues that the defense of misuse under the common law and the defense of alteration/modification by "changes in the . . . use of the product" under § 52-572p are separate and distinct defenses. The distinction drawn by the defendant is as follows: common law misuse is the failure to use a product in the manner intended by or reasonably foreseeable to the seller, while alteration/modification by misuse under § 52-572p "changes some essential characteristic of the product so that the user no longer views the product as it was intended by the manufacturer. It makes the user behave differently than he or she would have behaved if the product was not altered." This is certainly a fine line distinction and would appear, in this case, to be a distinction without a difference.

We agree with the defendant that misuse under the common law "occurs when a product is not used 'in a manner which should have been foreseen by the defendant.'" *Norrie* v. *Heil Co.*, 203 Conn. 594, 600, 525 A.2d 1332 (1987), quoting *Hoelter* v. *Mohawk Service, Inc.*, 170 Conn. 495, 517, 365 A.2d 1064 (1976). We also determine in this opinion that the common law

defense of misuse by a plaintiff may be asserted in a claim brought under the act. We disagree, however, with the claim that the § 52-572p alteration/modification by misuse defense has any application to conduct by a plaintiff.

In reaching our conclusion, we begin with the plain language of the act. "This court has consistently stated that [i]f the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction." (Internal quotation marks omitted.) *Vaillancourt* v. *New Britain Machine/Litton,* 224 Conn. 382, 395, 618 A.2d 1340 (1993). By its own terms, § 52-572p limits its application to alterations and modifications made by a "third party." The term "third party" is not defined in the act. "Where a statute . . . does not define a term, it is appropriate to focus upon its common understanding as expressed in the law and upon its dictionary meaning." (Internal quotation marks omitted.) *AirKaman, Inc.* v. *Groppo,* 221 Conn. 751, 756–57, 607 A.2d 410 (1992). The dictionary definition of "third party" is "[o]ne not a party . . . to . . . an action"; Black's Law Dictionary (6th Ed. 1990); and therefore does not include a plaintiff.

This conclusion is further reinforced by analyzing § 52-572p within the context of the act as a whole. The act provides the following definition of "claimant": "[A] person asserting a product liability claim for damages incurred by the claimant or one for whom the claimant is acting in a representative capacity."[10] General Statutes § 52-572m (c). Accordingly, the plaintiff in this case is clearly a "claimant." If the legislature had intended to include a plaintiff's conduct under

---

[10] "The definition of claimant is based on the definition in the draft uniform product liability law." 22 S. Proc., Pt. 14, 1979 Sess., p. 4636, remarks of Senator Salvatore C. DePiano.

§ 52-572p, it would have made the provision expressly applicable to "claimants" as it did with other provisions in the act. See, e.g., General Statutes §§ 52-572o (a) and 52-572q (a) and (b); see also *New Haven* v. *United Illuminating Co.*, 168 Conn. 478, 485, 362 A.2d 785 (1975) (in determining the meaning of a word or designation, it is appropriate to look to related statutory provisions). Therefore, the legislature appears to have unambiguously crafted an alteration/modification defense that is not applicable to the conduct of a claimant.[11]

Even if it can be argued that "third party" as set out in § 52-572p is ambiguous, we determine that the "claimant" is not within its scope for several reasons. First, because our Product Liability Act is modeled on the draft act, we look for guidance to commentaries on the draft act. *Maloney* v. *Pac*, 183 Conn. 313,

---

[11] The legislature's first attempt to enact a comprehensive product liability act; Public Acts 1978, No. 78-380; was vetoed by Governor Ella Grasso. Conn. Senate Journal, Pt. 2, Veto Message (June 7, 1978). Substantial differences between the product liability act and its vetoed predecessor provide additional evidence that the legislature's omission of "claimant" from General Statutes § 52-572p was intentional. The vetoed bill contained the following open-ended language: "In any products liability action, the manufacturer shall not be liable for any injury, death or property damage caused by a product *which has been substantially altered or modified.*" (Emphasis added.) Public Acts 1978, No. 78-380, § 4. It would appear that this broad language would apply to the conduct of a claimant as well as the conduct of third parties. In her veto message, Governor Grasso stated that one of the fatal flaws of the 1978 bill was an overly broad product alteration or modification defense. Conn. Senate Journal, Pt. 2, Veto Message (June 7, 1978). The 1979 bill; Public Acts 1979, No. 79-483, § 5; enacted as our Product Liability Act, is limited expressly to conduct of third parties. John Anderson, who served on the governor's product liability task force, testified before the judiciary committee in support of the 1979 bill: "Last year . . . [the product modification section was] basically framed in terms of [an] absolute [defense]. This year, our approach is quite different and it's modeled very much after the United States Commerce Department document. With respect to modification, it's a very qualified and conditioned defense." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., p. 569.

326–27, 439 A.2d 349 (1981). More specifically, we consult the commentary to § 110 of the draft act because § 52-572p adopted the language of that provision nearly verbatim.[12] The commentary states that § 110 of the draft act "deals with the situation where a third party—*one other than* the product seller or *the claimant*—has altered or modified the product and this has led to [the] claimant's harm."[13] (Emphasis added.) 44 Fed. Reg. 3010 (1979).

Second, our conclusion that the § 52-572p alteration/modification defense does not apply to the conduct

---

[12] Section 110 of the draft act provides: "(a) A product seller shall not be liable for harm that would not have occurred but for the fact that his product was altered or modified by a third party unless: (1) The alteration or modification was in accordance with the product seller's instructions or specifications; (2) The alteration or modification was made with the *express* consent of the product seller; or (3) The alteration or modification was the result of conduct that reasonably should have been anticipated by the product seller. (b) For the purposes of this section, alteration or modification includes changes in the design, formula, function or use of the product from that originally designed, tested or intended by the product seller. *It includes failure to observe routine care and maintenance, but does not include ordinary wear and tear.*" (Emphasis added.) 44 Fed. Reg. 3000. Except for the omission of the emphasized language, General Statutes § 52-572p is identical to § 110.

[13] Section 112 of the model act, on which the defendant claims that General Statutes § 52-572p was based, contains language substantially different than that of § 110 of the draft act. Section 112 provides in relevant part: "(D) Alteration or Modification of a Product. (1) 'Alteration or modification' occurs when a *person or entity other than the product seller* changes the design, construction, or formula of the product, or changes or removes warnings or instructions that accompanied or were displayed on the product. . . . (2) When the product seller proves, by a preponderance of the evidence, that an alteration or modification of the product *by the claimant,* or by a party other than the claimant or the product seller, has caused the claimant's harm, the claimant's damages shall be subject to reduction or apportionment to the extent that the alteration or modification was a cause of the harm. Under this Subsection, the trier of fact may determine that the harm arose solely because of the product alteration or modification." (Emphasis added.) 44 Fed. Reg. 62737. The emphasized language demonstrates a clear intent to reach the conduct of a claimant, and to apply the principle of comparative fault to the conduct of a claimant. Therefore, § 112 of the model act bears little resemblance to § 52-572p.

of a claimant is further reinforced by its plain language that, with certain exceptions, provides for a complete bar to recovery when the product has been altered or modified. That statute provides that the product seller *"shall not be liable* for harm that would not have occurred but for the fact that his product was altered or modified by a third party . . . ."[14] (Emphasis added.) Of course, the defendant's argument that the absolute bar of § 52-572p is applicable to the conduct of a claimant is inconsistent with § 52-572o,[15] which provides that

[14] The commentary to the draft act explains the considerations underlying the rule of § 110 that the product seller is not liable when a third party's alterations or modifications of the product cause the plaintiff's injury. To impose liability in such cases would "border on absolute liability" and would "fail to place the incentive for risk prevention on the party or parties who have engaged in the wrongful conduct." 44 Fed. Reg. 3010 (1979).

[15] General Statutes § 52-572o provides: "(a) In any claim under sections 52-240a, 52-240b, 52-572m to 52-572r, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant.

"(b) In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may make its own findings, indicating (1) the amount of damages each claimant would receive if comparative responsibility were disregarded, and (2) the percentage of responsibility allocated to each party, including the claimant, as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single party.

"(c) In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party.

"(d) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party.

"(e) If a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the right of action of

the claimant's right to recover is based on pure comparative responsibility. In other words, a partial recovery is allowed even if the claimant's injury is attributable mostly to his or her conduct.[16] "A statute should be read as a whole and interpreted so as to give effect to all of its provisions." *Pintavalle* v. *Valkanos*, 216 Conn. 412, 418, 581 A.2d 1050 (1990). The purpose of this rule is to avoid construing the statutes in such a way as to create a conflict between statutes; "[s]uch . . . reconciliation is especially important in dealing with provisions that are enacted as part of the same legislation." *Malerba* v. *Cessna Aircraft Co.*, 210 Conn. 189, 195, 554 A.2d 287 (1989).

Third, construing § 52-572p to apply only to the conduct of persons or entities other than the claimant whose modifications or alterations of the product cause the claimant's injury is consistent with our common law. Prior to the enactment of the act, we adopted a cause of action in strict tort liability based on the Restatement (Second) of Torts § 402 A. *Rossignol* v. *Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 559-60, 227 A.2d 418 (1967). Section 402 A shields defendants from liability for products altered or modified by providing that the product seller can be liable only when the seller's product "was expected to and did *reach the user or consumer without substantial change in the condition in which it was sold.*" (Emphasis added.) *Prokolkin* v. *General Motors Corp.*, 170 Conn.

---

the claimant against him and commenced the action for contribution within one year after payment, or (2) agreed while action was pending to discharge the common liability and, within one year after the agreement, have paid the liability and brought an *action for contribution.*"

[16] Representative John A. Berman, in the debate in the House of Representatives regarding the act, pointed out that under pure comparative responsibility, "if an individual is 10 percent at fault, then he would recover 90 percent, and . . . if he were 60 percent at fault, he would recover 40 percent. If he were 100 percent at fault, of course, he would recover nothing under this proposal." 22 H.R. Proc., Pt. 20, 1979 Sess., p. 7021.

289, 299, 365 A.2d 1180 (1976); *Rossignol* v. *Danbury School of Aeronautics, Inc.,* supra, 559. In other words, the defendant would be absolved of liability under § 402 A if the plaintiff's injury was the result of an alteration or modification to the product made by a third party. See 2 Restatement (Second), Torts § 402 A, comment (g) (1965). "In determining whether or not a statute abrogates or modifies a common-law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." *Willoughby* v. *New Haven,* 123 Conn. 446, 454, 197 A. 85 (1937).

Our conclusion leaves the defense of misuse on the part of the claimant without an express statutory basis in the act. Although § 52-572o, the comparative responsibility provision, is based on and mirrors the first part of § 111 of the draft act, the second part of § 111 extends beyond § 52-572o by expressly delineating the specific types of conduct that are chargeable to the claimant, including misuse.[17] The legislative history of our act is silent as to the reason why this part of § 111 was not adopted.

---

[17] Section 111 of the draft act provides the following: "(a) General Rule. In any claim under this Act, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant.

"(b) Apportionment of Damages. In any claim involving comparative responsibility, the court, unless otherwise requested by all parties, shall instruct the jury to give answers to special interrogatories, or the court shall make its own findings if there is no jury, indicating—

"(1) The amount of damages each claimant would have received if comparative responsibility were disregarded, and

"(2) The percentage of responsibility allocated to each party, including the claimant, as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single party.

"(3) In determining the percentage of responsibility, the trier of fact shall

Nevertheless, it is apparent that the legislature did not intend to eliminate consideration of the claimant's conduct in determining liability or the amount of damages. Otherwise, there would be no purpose for adopting the principle of comparative responsibility under § 52-572o.

consider, on a comparative basis, both the nature and quality of the conduct of the party.

"(4) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for that party.

"(5) Upon a motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is still to be subject to contribution and to any continuing liability to the claimant on the judgment.

"(c) Conduct Affecting Claimant's Responsibility.

"(1) Failure to Discover a Defective Condition.

"(i) A claimant is not required to have inspected the product for defective condition. Failure to have done so does not render the claimant responsible for the harm caused.

"(ii) Where a claimant using a product is injured by a defective condition that would have been apparent to an ordinary prudent person, the claimant's damages are subject to reduction according to the principles of subsections (a) and (b).

"(2) Using a Product With a Known Defective Condition.

"(i) A claimant who knew about a product's defective condition, but who voluntarily and unreasonably used the product, shall be held solely responsible for injuries caused by that defective condition.

"(ii) In circumstances where a claimant knew about a product's defective condition and voluntarily used the product, but where the reasonableness of doing so was uncertain, claimant's damages shall be subject to reduction according to the principles of subsections (a) and (b).

"(3) Misuse of a Product.

"(i) Where a claimant has misused a product by using it in a manner that the product seller could not have reasonably anticipated, the claimant's damages shall be reduced according to the principles of subsections (a) and (b).

"(ii) Where the injury would not have occurred but for the misuse defined in subsection (3) (i), the product is not defective for purposes of liability under this Act."

"In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *State* v. *Hinton,* 227 Conn. 301, 320, 630 A.2d 593 (1993).

Furthermore, under our common and statutory law, misuse by the claimant is a defense to a product liability action. General Statutes § 52-572*l*;[18] *Norrie* v. *Heil Co.,* supra, 203 Conn. 594. We will not interpret a statute to have the effect of altering prior statutory or common law unless the language of the statute clearly expresses an intent to have such an effect. *Lynn* v. *Haybuster Mfg., Inc.,* supra, 226 Conn. 290. No language of the act expresses such an intent. To the contrary, § 52-572o (a) contains broad language requiring the trier of fact to consider "the comparative responsibility of, or attributed to, the claimant, [which] shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant." It is reasonable to construe this broad language to incorporate the defense of misuse of a product by a claimant. Accordingly, we conclude that the legislature did not intend to abrogate this common law defense, but rather the act incorporates misuse as part of the consideration of pure comparative fault.

With this statutory construction in mind, we now turn to the trial court's instructions on misuse. With regard to the first certified question, although our conclusion is based on reasoning not relied upon by the

---

[18] General Statutes § 52-572*l* provides: "In causes of action based on strict tort liability, contributory negligence or comparative negligence shall not be a bar to recovery. The provisions of this section shall apply to all actions pending on or brought after June 7, 1977, claiming strict tort liability notwithstanding the date on which the cause of action accrued. Nothing in this section shall be construed as barring the defense of misuse of the product or the defense of knowingly using the product in a defective condition in an action based on strict tort liability."

Appellate Court, we agree with that court that the defendant was not entitled to a jury instruction on the defense of alteration/modification by misuse under § 52-572p. The trial judge did instruct on misuse under the common law and the defendant does not raise any claim of error in this respect.

In regard to the second certified question, we conclude, and the defendant conceded at oral argument, that comparative responsibility under § 52-572o is applicable to the common law misuse defense. The defendant's claim that comparative responsibility is not applicable to misuse has reference solely to § 52-572p.

The judgment is affirmed.

In this opinion the other justices concurred.