MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
GUERNSEY, Chief Judge
As a result of injuries sustained by the Plaintiff on February 16, 2006, the Plaintiff has brought two actions, the first against the Mohegan Tribal Gaming Authority and the second against a non-Tribal entity, Drive Medical Design & Manufacturing (hereafter “Drive Medical”), alleged to be *463 the manufacturer of a walking assistance device, the Go-Lite Rollator. These two actions were consolidated by order of this Court on March 7, 2007. Before the Court is Drive Medical’s Motion for Summary Judgment; the claims against the Mohegan Tribal Gaming Authority are not presently at issue.[1]
As regards Design Medical, the Plaintiffs claims, although couched in terms of negligence, also contained allegations suggestive of a products liability claim.[2] In its Motion for Summary Judgment, Drive Medical argued, correctly, that there is no Mohegan Tribal Law governing product liability claims. Therefore, Drive Medical asserted that Connecticut law should be controlling, under which common law causes of action are barred by the exclusivity provision of Conn. Gen.Stat. § 25-572n.[3] “The exclusivity provision makes the product liability act the exclusive means by which a party may secure a remedy for an injury caused by a defective product.” Gerrity v. R.J. Reynolds Tobacco Co., 263 Conn. 120, 126, 818 A.2d 769 (2003). The Plaintiff, while agreeing that under Connecticut law the negligence aspect of his claims was barred, asserted that it was unclear what law this Court would apply, but that in any case there remained the issue as to the adequacy of any warnings related to the use of the Go-Lite Rollator.
Subsequent to the oral argument on Drive Medical’s motion, the Gaming Disputes Court of Appeals rendered its Decision on Appeal in Lubrano v. Brennan Beer Gorman, Et Al., GDCA-T-07-501, 1 G.D.A.P. 48, 7 Am. Tribal Law 369, 2008 WL 5479063 (2008). In Lubrano, a case against numerous non-Tribal defendants, the Gaming Disputes Trial Court had held that the provisions of the Mohegan Torts Code (other than the provision regarding damage limitations) governed tort claims even against non-Tribal entities. In reversing the Trial Court’s summary judgment in favor of one Defendant on grounds that claims against it were not filed within the Tort Code’s statute of limitations, thereby depriving the Court of jurisdiction, *464 the Court of Appeals, after reviewing the statutory history and purpose of the Torts Code as well as its express statement of purpose, held that the Torts Code had no applicability to tort claims against non-Tribal entities. Such claims remained subject to Connecticut law, under which the defense of statute of limitations would be a special defense, not involving the jurisdiction of the Court.
Drive Medical is therefore correct in asserting that Connecticut statutory and case law authority is controlling as to the claims against it. As for the negligence and warranty claims, these are barred by Conn. Gen.Stat. § 52-572n. The issue thus before the Court is whether there exists a “genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law” on the Plaintiffs product liability claims. G.D.C.P. § 49(f). Under Connecticut’s product liability law, “[a] product may be defective due to a flaw in the manufacturing process, a design defect or because of inadequate warnings or instructions.” Vitanza v. The Upjohn Company, 257 Conn. 365, 373, 778 A.2d 829 (2001). As for inadequate warnings or instructions, Conn. Gen.Stat. § 52-576q provides as follows:
§ 52-572q. Liability of product seller due to lack of adequate warnings or instructions
(a) A product seller may be subject to liability for harm caused to a claimant who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided.
(b) In determining whether instructions or warnings were required and, if required, whether they were adequate, the trier of fact may consider: (1) The likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions.
(c) In claims based on this section, the claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm.
(d) A product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to take or recommend precautions against the potential harm.
In this context, user awareness is an issue to be weighed by the trier of fact:
Thus, pursuant to § 52-572q(b), the anticipated awareness of an expected user with respect to the dangers of a particular product factors into the trier’s determination of whether warnings were required and if so whether those provided were adequate.
Sharp v. Wyatt, Inc., 31 Conn.App. 824, 849, 627 A.2d 1347 (1993). In this respect, the Plaintiffs affidavit in opposition to the motion for summary judgment asserts that the Rollator chair was purchased for him by his brother, and that the Plaintiff never received any user’s manual or other paperwork. The Plaintiff claims that the chair was defective “because there are no warnings on the chair at all and the wheels on my model are too small, making it tippy.” Affidavit of Richard Lipkin, Paragraph 9. The Plaintiff also asserts that the chair itself contained no “warning labels or notices ... not to use it as a transportation *465 device,” Id, Paragraph 7, and he used the device in a way he thought was appropriate. Id, Paragraph 10.
It is precisely this manner of use that Drive Medical argues constitutes misuse of the product. The videotape of the incident reveals the Plaintiff seated in the Rollator, propelling himself backwards for a considerable distance, until the rear wheels of the chair meet what appears to be an expansion strip in the floor and the chair falls over. Drive Medical argues that its warnings assert that the Rollator is a walking aid only and not a transportation device. To this the Plaintiff responds that such warnings do not appear on the device itself and that the Plaintiff had never seen such a warning.
The common law defense of misuse by a plaintiff “may be asserted in a claim brought under the [product liability] act,” and “occurs when a product is not used ‘in a manner which should have been foreseen by the defendant.’ ” Elliot Et Al. v. Sears, Roebuck and Company, 229 Conn. 500, 507-08, 642 A.2d 709 (1994).[4] The Connecticut Supreme Court has held that this defense is incorporated in the broad language of the comparative responsibility section of the product liability act, which provides in part:
§ 52-572o. Comparative responsibility. Award of damages. Action for contribution
(a)In any claim under sections 52-24-0a, 52-240b, 52-572m to 52-572q, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant.
(b) In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may make its own findings, indicating (1) the amount of damages each claimant would receive if comparative responsibility were disregarded, and (2) the percentage of responsibility allocated to each party, including the claimant, as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single party.
(c) In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party.
(d) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfea-sors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party.
This test necessarily involves the examination of the conduct of the plaintiff, whose behavior m propelling himself back *466 wards through the Casino while seated on the Rollator can hardly be described as prudent. Nevertheless, the use of summary judgment in product liability eases, as well as cases involving issues related to the standard of care, has been criticized:
Negligence cases, which involve determining whether the defendant breached an appropriate standard of care, are usually not resolved by summary judgment. Spencer v. Good Earth Restaurant Corp., 164 Conn. 194, 198, 319 A.2d 403 (1972). “Whether a product is defective under § 52-572q is a question of fact. Subsection (b) of that statute clearly states that ‘in determining whether instructions or warnings were required and, if required, whether they were adequate, the trier of fact may consider:....”’ (Emphasis in original.) Sharp v. Wyatt, Inc., 31 Conn.App. 824, 834, 627 A.2d 1347 (1993); see also Gaulton v. Reno Paint & Wallpaper Co., 177 Conn. 121, 126, 412 A.2d 311 (1979).
Rana v. Ritacco, 1994 WL 597277 (Conn.Super., Oct. 25, 1994) (Leuba, J.) (“Accordingly, the motion for summary judgment must be denied because Connecticut’s product liability statute expressly grants the trier of fact the power to determine whether a manufacturer has breached its duty of care and the determination of breach of duty of care is a question of fact for the jury ... ”). Id.
In this ease, In addition to substantial issues regarding the conduct of the plaintiff, there remains a genuine issue of material fact as to whether or not the warnings originally provided with the Rollator were adequate, and whether the same were in conformance with Conn. Gen.Stat. § 52-572q(d) as “devised to communicate with the person best able to take or recommend precautions against the potential harm.” Accordingly, Drive Medical’s motion for summary judgment is denied insofar as the Plaintiffs complaint alleges a cause of action based on the Connecticut product liability act.

. These claims are based solely on allegations of negligence with respect to an expansion joint in the floor of the Mohegan Sun Casino, and therefore avoid the issue of the whether product liability claims may be asserted against Tribal entities under the Mohegan Torts Code, MTC 3-241 et seq.

. “5. The injuries and damages sustained by the plaintiff, Richard Lipkin, were caused by the negligence and carelessness of the defendant, its agents, servants or employees, in one or more of the following ways, in that: ...
c. They breached an implied warranty of merchantability;
d. They breached their express warranties in that said GoLite Rollator chair of the plaintiff was safe for its intended use;
e. They manufactured, sold and/or distributed a product that was in a defective and unreasonably dangerous condition and could not be used without unreasonable risk of injury to the public, and in particular, the plaintiff;
f. They manufactured, sold and/or distributed a product without regard to the conditions in which it was reasonably expected to be operated; and
g. They failed to warn consumers and the general public, and in particular, the plaintiff, that the Go-Lite Rollator chair was not safe for its intended and foreseeable use.
6. Said Go-Lite Rollator chair was not altered or modified in any way by the plaintiff herein or by any third party in which the chair was manufactured and sold by the defendant.”

. Sec. 52-572n. Product liability claims.
(a) A product liability claim as provided in sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product.

. In Elliot, the Connecticut Supreme Court recognized that there is no express statutory basis in the products liability act for the defense of misuse of the product by the claimant, but that under established statutory and common law the defense was available. In view of the broad language in the comparative responsibility portion of the act. Conn. Gen.Stat. § 52-572o, the Court declined to find any intent on the part of the legislature to alter prior decisions. Elliot, at 513, 514, 642 A.2d 709.