******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VERTEFEUILLE, J., concurring and dissenting. I agree with the majority opinion insofar as it concludes that § 402A of the Restatement (Second) of Torts applies to a product liability claim for negligence under Connecticut's Product Liability Act (act), General Statutes § 52-572m et seq. I disagree, however, with the majority's conclusion in part IV of its opinion that our common-law rule of punitive damages does not apply to an award of statutory punitive damages pursuant to General Statutes § 52-240b. Accordingly, I respectfully dissent from that portion of the majority opinion.

This court has repeatedly held that "[i]nterpreting a statute to impair an existing interest or to change radically existing law is appropriate only if the language of the legislature plainly and unambiguously reflect such an intent. [W]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Citation omitted; internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001).

"We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated. The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." (Internal quotation marks omitted.) Id., 381–82; *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 715, 735 A.2d 306 (1999); see also *Elliot* v. *Sears, Roebuck & Co.*, 229 Conn. 500, 515, 642 A.2d 709 (1994) ("[w]e will not interpret a statute to have the effect of altering prior statutory or common law unless the language of the statute clearly expresses an intent to have such an effect"); *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 289–90, 627 A.2d 1288 (1993) (statute in derogation of common law or creating liability where none existed is strictly construed and not to be extended, modified or enlarged in scope; elimination of common-law right by statute only if legislative intent is clearly and plainly expressed). We previously have applied these principles to the act. See *Vitanza* v. *Upjohn Co.*, supra, 257 Conn. 381; *Elliot* v. *Sears, Roebuck & Co.*, supra, 515; *Lynn* v. *Haybuster Mfg., Inc.*, supra, 289–90.

Under the common law of this state, "[i]n order to award punitive or exemplary damages, [the] evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 486, 871 A.2d 981 (2005). Punitive damages in common-law tort actions are limited to litigation expenses, such as attorney's fees, less taxable costs. *Hylton* v. *Gunter*, 313 Conn. 472, 484, 97 A.3d 970 (2014). This is because, under the long-standing law of this state, "[t]he [purpose] of awarding punitive damages is not to punish the defendant for his offense, but to compensate the plaintiff for his injuries." (Internal quotation marks omitted.) *Whitaker* v. *Taylor*, 99 Conn. App. 719, 730, 916 A.2d 834 (2007); see also *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 97, 881 A.2d 139 (2005) ("common-law punitive damages . . . are intended to do no more than make the litigant whole"); *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 236, 477 A.2d 988 (1984) (discussing long history of this state's rule limiting punitive damages to litigation expenses).

Section 52-240b provides: "Punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product. If the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff." Thus, the plain language of § 52-240b merely provides that punitive damages cannot exceed twice the compensatory damages award. The statute does not plainly and unambiguously abrogate the common-law rule that punitive damages are limited to litigation expenses. Indeed, the statute is silent as to the meaning of "punitive damages." Accordingly, I believe that we must interpret § 52-240b as incorporating the common-law limitation on punitive damages. *Elliot* v. *Sears, Roebuck & Co.*, supra, 229 Conn. 515 ("[w]e will not interpret a statute to have the effect of altering prior statutory or common law unless the language of the statute clearly expresses an intent to have such an effect"); see also *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, 767 F. Supp. 2d 324, 329 (D. Conn. 2010) (§ 52-240b incorporates "the traditional method of calculating a punitive damages award").

Moreover, in statutes where the legislature has wanted to make it clear that punitive damages may be awarded over and above litigation expenses, the legislature has expressly provided that punitive damages may be awarded "in addition to" attorney's fees, or has used language to that effect. See General Statutes § 42-110g (d) ("[i]n any action brought by a person

under this section, the court may award, to the plaintiff, *in addition to* the relief provided in this section [including punitive damages], costs and reasonable attorneys' fees" [emphasis added]); *Ulbrich* v. *Groth*, 310 Conn. 375, 449, 78 A.3d 76 (2013) (punitive damages authorized by § 42-110g [d] are not subject to common-law limitation because statute provides that attorney's fees may be awarded "in addition to" punitive damages [emphasis omitted]); see also General Statutes § 35-53 (b) ("the court may award punitive damages in an amount not exceeding twice any award made under subsection [a] *and may award* reasonable attorney's fees to the prevailing party" [emphasis added]); *Smith* v. *Snyder*, 267 Conn. 456, 469–70, 839 A.2d 589 (2004) (punitive fees authorized by § 35-53 [b] are not subject to common-law limitation).[1]

Because these statutes contain language that § 52-240b does not contain, their relationship to § 52-420b does not render the meaning of the term "punitive damages" as used in that statute plain and unambiguous. Accordingly, we may look to the legislative history of the act to determine the scope and meaning of that term. See General Statutes § 1-2z. This legislative history supports the conclusion that § 52-240b was not intended to abrogate the common-law rule of punitive damages. The legislature considered a bill that specifically provided that, if the claimant proved that the harm suffered was the result of reckless disregard for the safety of product users, punitive damages could be awarded "*in addition to attorney's fees* . . . ." (Emphasis added.) Substitute House Bill No. 5870, 1979 Sess., § 8 (a).[2] The emphasized language was deleted before the bill was enacted. See Substitute House Bill No. 5870, as amended by House Amendment A, § 8 (a). It is reasonable to conclude that this was done because the legislature was aware that, under the common law of this state, punitive damages *consist of* attorney's fees. *Alvarez* v. *New Haven Register, Inc.*, supra, 249 Conn. 722 ("[t]he legislature is presumed to be aware of this court's decisions and, therefore, the common-law limitations on the [defendant's] liability already in place"). Thus, the most reasonable explanation for the intentional deletion of such language from § 52-240b is that the legislature intended that, for purposes of the act, the existing common-law limitation would apply to punitive damages. See *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 767 F. Supp. 2d 328 ("[b]y rejecting proposed legislation that would have authorized punitive damages 'in addition to attorney's fees,' the legislature declined to expand punitive damages beyond the common-law measure of litigation less taxable costs").

In addition, the legislature considered and rejected a provision that would have required the court to consider multiple factors in determining the amount of punitive damages; compare Substitute House Bill No. 5870, § 8 (b)[3] and Public Acts 1979, No. 79-483, § 8; and, instead,

adopted the provision capping punitive damages at twice the amount of the compensatory award. If the legislature had intended to authorize an award of punitive damages over and above litigation expenses, I can perceive no reason why it would have deliberately declined to provide the court with objective criteria by which it could determine the amount of such an award.[4] See *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 767 F. Supp. 2d 329 ("[t]he legislature's outright rejection of the [multifactor] method of calculation demonstrates its intent to preserve the common-law formulation").

Finally, the legislative history of the act shows that, far from being concerned with punishing defendants in product liability actions by authorizing damage awards that exceed the plaintiffs' actual losses, the legislature was primarily concerned with "the rising price of product liability insurance" that had "hindered the ability of companies to acquire coverage and to assume the risk necessary for innovation without increasing the costs of their products."[5] Connecticut State Library, Law and Legislative Reference Unit, Connecticut Legislative Histories Landmark Series: 1979 Public Act No. 483 (2007) preface. In light of this concern, it would have been entirely reasonable for the legislature to adopt the common-law limitation on punitive damages and, in addition, to cap such damages at twice the compensatory award in order to limit liability in cases where the compensatory damages—and, presumably, the injuries—are small, but the litigation expenses are large.[6] Accordingly, I would conclude that "punitive damages" as used in § 52-240b has the same meaning as under our common law, namely, litigation expenses, such as attorney's fees, less taxable costs. *Hylton* v. *Gunter*, supra, 313 Conn. 484.

Accordingly, I respectfully dissent from part IV of the majority opinion.

[1] The majority points out that another provision of the act, General Statutes § 52-240a, provides that, "[i]f the court determines that the claim or defense is frivolous, the court may award reasonable attorney's fees to the prevailing party in a products liability action." The majority contends that, combined, §§ 52-240a and 52-240b have the same effect as § 35-53 (b), which authorizes awards of both punitive damages (not subject to the common-law limitation) and attorney's fees if the court finds "wilful and malicious misappropriation" of a trade secret. As the majority recognizes, however, § 52-240a applies to entirely different conduct than § 52-240b. Specifically, § 52-240a applies either when the plaintiff in a products liability action has raised a frivolous claim or when the defendant has raised a frivolous defense, while § 52-240b applies when the defendant has had "reckless disregard for the safety of product users, consumers or others who were injured by the product." Thus, §§ 52-240a and 52-240b merely provide that there are two distinct situations under the act that authorize the court to award attorney's fees, not, as provided by §§ 35-53 (b) and 42-110g (d), that the court is authorized to award punitive damages *in addition to* attorney's fees for the same misconduct.

[2] Substitute Bill No. 5870, § 8 (a), provides: "Punitive damages, in addition to attorney's fees, may be awarded if the claimant shows by clear and convincing evidence that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product."

[3] Substitute Bill No. 5870, § 8 (b), provides: "If the trier of fact determines that punitive damages should be awarded, it shall determine the amount of such damages. In making such determination, the court shall consider: (1)

The likelihood at the time of manufacture that a serious harm would arise from the product seller's misconduct, (2) the degree of the product seller's awareness of such likelihood of harm, (3) the profitability of the misconduct to the product seller, (4) the duration of the misconduct and any concealment of it by the product seller, (5) the attitude and conduct of the product seller upon discovery of the misconduct, (6) the financial condition of the product seller, and (7) the total effect of other punishment imposed or likely to be imposed upon the product seller as a result of the misconduct, including punitive damage awards to persons similarly situated to the claimant and the severity of criminal penalties to which the product seller has been or may be subjected."

[4] Accordingly, I disagree with the majority's statement that "[t]here is nothing to indicate that [in deleting the relevant language providing criteria for determining the amount of punitive damages], the legislature intended to change the meaning of 'punitive damages' as used in the proposed bill." If the legislature intended to reject the common-law limitation on punitive damages, there would have been no reason for it to delete the proposed language.

[5] See Proposed House Bill No. 5870, 1979 Sess. ("STATEMENT OF PUR-POSE: [t]o restore balance in the law of product liability"); Proposed Senate Bill No. 443, 1979 Sess. ("STATEMENT OF PURPOSE: [t]o restore balance in the law of product liability and relieve a serious economic problem"); Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., pp. 552–53, remarks of Philip H. Dreissigacker, vice president of technology for the Farrel Company (referring to "testimony in previous years, 1976, 1977 and 1978 outlining the increasing effect of uncontrollable product liability suits on the economics of our company both as to escalation and cost of insurance, which has been 1200 percent in six years escalation, and in the number of new cases per year"); Conn. Joint Standing Committee Hearings, supra, p. 568, remarks of John Anderson, assistant counsel for the Connecticut Business and Industry Association (referring to "the increased cost of product liability insurance" and "[i]ts impact on the prices of both consumer and industrial goods, the uncertainty nationwide with respect to product liability law"); Conn. Joint Standing Committee Hearings, supra, p. 570, remarks of Anderson ("[w]e believe that the legislature can positively address the product liability problem without unduly restricting any [plaintiff's] rights and that is the thrust of House Bill 5870"); Conn. Joint Standing Committee Hearings, supra, p. 578, remarks of Norman Parsells, director of Sturm, Ruger and Company (company's insurance premiums have increased from $90,000 to $3 million per year as result of product liability); Conn. Joint Standing Committee Hearings, supra, pp. 578–79, remarks of Parsells (proposed legislation "tries to restore fairness and equality to the field of product liability law" and would reduce insurance rates nationally); Conn. Joint Standing Committee Hearings, supra, pp. 582–83, remarks of Parsells ("my client has to add $8 to the cost of every product that ships out because of this product liability problem").

The majority contends that "[t]he punitive damages provision was added to the proposed bill after consumer interests spoke in opposition to the original bill, which was far less favorable to the consumer than the final bill in various respects." Although the punitive damages provision may have been adopted to make the proposed legislation appear more palatable to consumers, it does not necessarily follow that the provision was intended to abrogate the common-law limitation on punitive damages. In light of the overriding legislative intent to rebalance product liability law in favor of defendants, it is more reasonable to conclude that the legislature intended to adopt the common-law limitation.

[6] The majority points out that the legislature imposed no such cap in General § 52-240a, which authorizes an award of attorney's fees to the prevailing party if the court determines that a claim or defense was frivolous; see footnote 1 of this concurring and dissenting opinion; and contends that it is unlikely that "the legislature would have deemed the defendant's assertion of a frivolous defense to merit a harsher penalty than the defendant's injury causing reckless disregard for others' safety." The majority fails to recognize, however, that § 52-240a provides a two-edged sword: although it allows for full recovery of attorney's fees from a defendant who raises a frivolous defense, it also allows for full recovery of such fees from a plaintiff who raises a frivolous claim. Thus, the provision maintains balance in product liability law. In contrast, authorizing for the first time an award of broad punitive damages would have altered the existing balance in favor of plaintiffs, thereby exacerbating the economic problem that the act was

intended to alleviate. See footnote 5 of this concurring and dissenting opinion.

———————————————